**In re MIDDLETOWN METRO ASSOCIATES, Debtor.**

**Bankruptcy No. 97–25134.**

United States Bankruptcy Court,
D. Connecticut.

June 3, 1998.

Patrick W. Boatman, Thomas C. Boscarino, Boatman, Boscarino & Grasso, Glastonbury, CT, for Debtor.

Matthew J. Forstadt, Randall M. Skigen, Wofsey, Rosen, Kweskin & Kuriansky, L.L.P., Stamford, CT, for Metro Square, L.L.C., Movant.

## MEMORANDUM OF DECISION ON MOTION TO DISMISS OR CONVERT CHAPTER 11 CASE

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

The matter before the court is a motion ("the motion") filed by Metro Square, LLC ("the movant") to dismiss or convert the Chapter 11 case of Middletown Metro Associates ("the debtor") on the grounds that the debtor is ineligible for Chapter 11 protection pursuant to 11 U.S.C. § 109(d). The court, on April 23, 1998, conducted a hearing on the motion and both parties submitted post-hearing briefs.

### II.

Lucius Pettingill ("Pettingill") and Thomas Kane ("Kane") formed, in 1986, without a written partnership agreement, a general partnership called Middletown Metro Associates to acquire a shopping center known as Metro Square ("the property"), located in Middletown, Connecticut. Pettingill and Kane owned 75% and 25% of the partnership, respectively. Creditors filed involuntary Chapter 7 petitions in this court against both general partners in May, 1992, and orders for relief were entered in July, 1992. The court granted Pettingill and Kane discharges on November 3, 1992. John J. O'Neil ("the trustee"), trustee of both Chapter 7 estates, abandoned the estates' interests in the partnership interests on December 8, 1994 to Pettingill and Kane.

When the partnership interests were abandoned, Shawmut Bank ("Shawmut") held second and third mortgages on the property. During the six months prior to December, 1994, Pettingill and Kane discussed with Shawmut restructuring or refinancing Shawmut's loans. About one month after the trustee abandoned the partnership interests,

Shawmut sold both loans to the movant. Shortly thereafter, the movant filed a complaint in state court to foreclose both mortgages, and the foreclosure action was scheduled for trial in Middletown Superior Court in July, 1997. In mid-July 1997, the movant withdrew the count of its complaint that sought to foreclose the third mortgage. Although the debtor objected to the withdrawal, the trial court overruled the objection and limited the issues to foreclosure of the second mortgage. The debtor, on December 2, 1997, filed a Chapter 11 petition because it believed its inability to resolve issues with respect to the third mortgage left it unable to investigate refinancing of the property.

The debtor, on November 25, 1997, had filed in the state court a Memorandum Regarding Lack of Authority on the Part of Lucius Pettingill to Bind Middletown Metro Associates stating that "[i]t is axiomatic that the bankruptcy of a general partner constitute [sic] an event of dissolution dissolving the general partnership" so that the debtor "was dissolved on July 29, 1992, [when] orders for relief entered against both its general partners." *Movant's Exh. A* at 1.

After the trustee abandoned the partnership interests to them, Pettingill and Kane, under the name of Middletown Metro Associates, continued to operate the property, employing a property manager to handle day-to-day operations. They filed income tax returns under "KP Associates"[1] for the years 1994 through 1997, as they had from 1986 to 1992, allocating income from the property to Pettingill and Kane.

### III.

Section 109(d) of the Bankruptcy Code provides that "[o]nly a person that may be a debtor under Chapter 7 of this title . . . may be a debtor under Chapter 11 of this title." 11 U.S.C. § 109(d). Pursuant to § 101(41) of the Code, "person" includes a "partnership." The definition of a "partnership" is a matter of nonbankruptcy law. *See C–TC 9th Ave. Partnership v. Norton Co. (In re C–TC 9th Ave. Partnership),* 113 F.3d 1304, 1307 (2d Cir.1997). According to the Connecticut partnership statute in effect when orders for relief entered against Pettingill and Kane, the bankruptcy of any partner causes dissolution of a partnership. *See* CONN. GEN. STAT. § 34–69(5) (repealed July 1, 1997). "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." *Id.* § 34–68 (repealed July 1, 1997).

Effective July 1, 1997, Connecticut adopted the revised Uniform Partnership Act (1994) ("the revised UP"). The new statute provides that "the association of two or more persons to carry on as co-owners a business for profit forms a partnership." CONN. GEN. STAT. § 34–314(a) (West 1997). A "partnership" is "an association of two or more persons to carry on as co-owners a business for profit formed under section 34–314, predecessor law or comparable law of another jurisdiction." *Id.* § 34–301(5).

### IV.

The movant, relying on the Second Circuit's ruling in *C–TC 9th Ave. Partnership,* contends that the debtor is ineligible for Chapter 11 protection pursuant to 11 U.S.C. § 109(d) because the debtor was dissolved by operation of law in July, 1992, when orders for relief entered against Pettingill and Kane. *See Movant's Post–Hearing Mem.* at 2–4. According to the movant, the debtor was not reconstituted after December 8, 1994, but remains a partnership in dissolution with the sole power to wind up its affairs. *Id.* 4–10.

The debtor asserts that, when the trustee abandoned the estates' interests in the partnerships interests, the partnership was reconstituted by the subsequent actions of Pettingill and Kane or, alternatively, that it was reconstituted when Connecticut adopted the revised UP. *See Debtor's Mem. in Opp'n. to Mot. to Dismiss or Convert* at 12–13.

### V.

The court concludes that the debtor is eligible for Chapter 11 relief. It is undisputed that the orders for relief in the involuntary Chapter 7 cases caused dissolution of

---

1. Pettingill and Kane had many properties in addition to Metro Square and accounted for all properties for income tax purposes under a partnership tax return for KP Associates.

the partnership that existed in 1992. When the trustee, in December 1994, abandoned the partnership interests to Pettingill and Kane, they, as co-owners, once again associated to operate the property as a business for profit. The court concludes such activities clearly created a new partnership at that time.

*C–TC 9th Ave. Partnership,* upon which the movant relies, is distinguishable. In *C–TC,* a general partnership, from which one of the two partners had withdrawn, filed a Chapter 11 petition to stay a state court foreclosure. *See* 113 F.3d at 1307. The partnership acknowledged that it was in dissolution but argued that it was still a "person" for purposes of Chapter 11. *See id.* at 1308. Applying New York law, which, like the former Connecticut statute, relieved a partnership in dissolution of all responsibilities except for winding up, the court held that a partnership in dissolution could not reorganize. *See id.* at 1309. The partner's withdrawal in *C–TC* not only precipitated dissolution but also precluded the entity from being a partnership, because New York law defined a partnership as composed of two or more persons acting as partners. *See id.* at 1307. Unlike the debtor in *C–TC,* which no longer qualified as a partnership under New York law, the debtor, an "association of two or more persons to carry on as co-owners a business," qualifies as a partnership under Connecticut law.

## VI.

For the foregoing reasons, the movant's motion to dismiss or convert the debtor's Chapter 11 case is denied.

It is SO ORDERED.